### Ex parte TSUGIO MIYAZONO.

### TSUGIO MIYAZONO v. CARR, District Director.

### No. 6456.

Circuit Court of Appeals, Ninth Circuit.
Oct. 19, 1931.

Leo B. Wayland, of Los Angeles, Cal., for appellant.

Samuel W. McNabb, U. S. Atty., and Milo E. Rowell and Harry Graham Balter, Asst. U. S. Attys., all of Los Angeles, Cal. (Harry B. Blee, U. S. Immigration Service, of Los Angeles, Cal., on the brief), for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and ST. SURE, District Judge.

SAWTELLE, Circuit Judge.

Tsugio Miyazono, aged 14, arrived at San Pedro, Cal., on June 23, 1930, from Japan. He was accompanied by his father, Shichitaro Miyazono, and an older brother, Hideo Miyazono, aged 16, and applied for admission as a United States citizen. The father was admitted on the day of his arrival on presentation of his re-entry permit showing that he was a returning resident alien.

Hideo was admitted on July 16, 1930, as a native-born citizen of the United States. Tsugio was denied admission on the grounds: (a) That he was born in Japan; (b) that he is an immigrant alien not in possession of an unexpired immigration vise as required by the Immigration Act of May 26, 1924, § 13 (a), 8 USCA § 213 (a); and (c) that he was an alien of a race ineligible to citizenship, and not exempted by paragraph (c) of section 13 of the Act of 1924 (8 USCA § 213 (c), from the operation of that act.

Tsugio appealed to the Secretary of Labor, and on August 5, 1930, the exclusion of this alien was affirmed, such exclusion having been likewise affirmed by the Board of Review. The original excluding decision was handed down by a Board of Special Inquiry, sitting at San Diego.

Upon petition of a next friend, Tsugio Miyazono presented an application for a writ of habeas corpus in the court below. The writ was issued, a hearing was had, and

the writ was discharged; the alien thereupon being remanded to the custody of the immigration officers. From that order, the alien appeals.

Appellant relies upon one specification of error, as follows: "The court erred in holding and deciding that Tsugio was not entitled to enter the United States as the son of a resident alien."

In his brief, appellant concedes that "the record clearly shows that the applicant applied for admission as a citizen." But, the appellant adds: "All the testimony of the witnesses on behalf of the applicant was clearly to establish that he was in fact born in Japan and did not claim the right to enter this country as a citizen, yet was allowed to proceed fully on the theory that the hearing was conducted solely for the purpose of determining his status as a citizen and not that as a resident alien."

The record, however, does not bear out this statement. The transcript of the testimony taken before the Board of Special Inquiry shows the following questions and answers:

Testimony of Hideo Miyazono, applicant's brother:

"Q. Where was Tsugio born? A. He was born in the same place where I was born, in Soledad, Monterey Co. [California]."

Testimony of Tsugio Miyazono, the applicant:

"Q. When and where were your born? A. I was born in Soledad, Monterey Co., April 3, 1916.

"Q. Who told you to say that? A. My father. * * *

"Q. What did he tell you to say? A. I was born in Soledad, Monterey County.

"Q. Young man, you know that you were not born in Monterey County, dont you? A. No, I was born there.

"Q. Didn't your father ever tell you that you were born in Kominato, Higashikaseda-Mura, Kawanabe-Gun, Kagoshima-Ken, Japan? A. No.

"Q. When did you first learn that you were supposed to have been born in the United States? A. About one month before coming to the United States.

"Q. Before that, where did you think, and where did you say, that you were born? A. I always thought that I was born in the United States."

Indeed, as late in these proceedings as the complaint and petition for a writ of habeas corpus, it was alleged on behalf of the applicant that: " * * * Direct and documentary evidence adduced before the United States Immigration Department affirmatively *establishes* that said Detained was born in the United States, April 19, 1916; that Detained presented a birth certificate of the County of Monterey, State of California, affirmatively *establishing* his said birth as of said date, birth certificate No. 132, issued at Monterey, California, August 2nd, 1916." (Italics our own.)

Furthermore, the petition for a writ of habeas corpus sets forth: " * * * The records disclosed that the only investigation on the part of the Government in this respect confirmed the *contentions* of the Detained and *established* the fact that the said birth certificate as presented, was in fact on record in the County of Monterey as aforesaid." (Italics our own.)

It is true that the father admitted to the Board that Tsugio was born in Japan, but even at that time he did not wholly relinquish his contention that Tsugio was an American citizen, by virtue of the spurious birth certificate that he himself had procured.

"Q. Do you claim United States citizenship for your youngest boy Tsugio Miyazono? A. I couldn't tell you whether he is a United States citizen or a Japanese citizen. * * *

"Q. Do you believe that any Japanese can come to the United States without any papers? A. No, but I have the birth certificate, so I thought it was all right.

"Q. According to your statement, the boy was not born in the United States. A. Yes, he was born in Japan, but I thought if I had this birth certificate I could bring him in."

Counsel for appellant claims that, "unfortunately, through inadvertence, the word citizen was employed instead of the word resident in petitioner's opening brief in the court below." But surely it cannot be contended that all the foregoing testimony likewise was given through "inadvertence."

Furthermore, this testimony was bolstered up by a birth certificate that was clearly fraudulent. In this connection, applicable indeed is the classic language of Mr. Justice Holmes, in Rock Island, Arkansas & Louisiana Railroad Co. v. United States, 254 U. S. 141, 143, 41 S. Ct. 55, 56, 65 L. Ed. 188:

"Men must turn square corners when they deal with the Government."

Nor are we impressed with the oral argument of appellant's counsel that the place of conception might, by the Japanese, be considered the place of birth. In the first place, the record is absolutely silent as to such alleged Japanese custom; secondly, the father had been in the United States long enough to know what constitutes a "birthplace" in occidental interpretation; and, thirdly and conclusively, the father, in the testimony cited above, showed that he well knew that his son was born in Japan, by *any* interpretation.

As we have seen, therefore, the entire case in the proceedings below was argued on the theory that the applicant was born in the United States. Now, when the proof has failed him as to this main issue, appellant seeks to change his plan of attack and to contend that the Board of Special Inquiry was not "fair" because the Board decided his case according to the theory selected by the applicant himself; and, further, because, forsooth, "at no time was applicant informed of his rights nor questioned as to his status in respect to his right to apply for entry into this country as the son of a resident alien."

It cannot be claimed that, in considering the issue selected by the applicant himself—namely, that of citizenship—the Board did not conduct the hearings with entire fairness. The best proof that the Board was fair is the fact that its finding on that issue coincides with the admission now freely made by the appellant: That the latter was not, in fact, born in the United States.

That issue was of the applicant's own selection; and he cannot now complain that another issue was not suggested to him. He sought to bolster up his claim to American citizenship by trying to palm off a fraudulent birth certificate, in order to evade the laws of the country that he was seeking to enter. His attempt was frustrated, and the only claim to being permitted to enter made by him at the time has been found groundless. He has had his day in court; he cannot now urge that he should have had two.

Furthermore, the burden of proof was upon the alien, and there was no duty on the part of the Board to suggest other "theories" to the applicant, once the original theory upon which he sought to enter was exposed as being not only unfounded but fraudulent.

"Whenever any alien attempts to enter the United States the burden of proof shall be upon such alien to establish that he is not subject to exclusion under any provision of the immigration laws; and in any deportation proceeding against any alien the burden of proof shall be upon such alien to show that he entered the United States lawfully. * * * *" 8 USCA § 221.

The lack of opportunity, if any, that the applicant suffered with regard to presenting the "theory" upon which he now relies, was due solely to his own act in presenting the original claim of citizenship, which he or his father, or both, knew was fraudulent.

The applicant cannot now be heard to change the theory of his case. In Sacramento Suburban Fruit Lands Co. v. Melin, 36 F.(2d) 907, 909, Judge Dietrich, of this court, said: "At no time did plaintiff suggest or intimate the theory upon which he now relies, even when the court instructed the jury at some length upon the contrary theory. Such an issue involves a fact of public record equally open to both parties, and now to affirm a judgment for a reason apparently never thought of by the lower court or either party to the controversy would hardly be consistent with the spirit of modern judicial administration. Very generally is applied the rule that a theory accepted and acted upon by all in the trial court cannot be repudiated in the appellate court. Peck v. Heurich, 167 U. S. 624, 17 S. Ct. 927, 42 L. Ed. 302; Westlake Merc. F. Co. v. Merritt (Cal. App.) 262 P. 815."

Judgment affirmed.